**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**NANCY ANDERSON, ET AL.**                                    **CIVIL ACTION**

                                                                **No. 21-1891**
                                        **C/W: 21-1897; 21-1898; 21-1899; 21-1985;**
                                              **21-1988; 21-2054; 21-2099; 21-2101;**
**VERSUS**                               **21-2107; 21-2108; 21-2274; 21-2294;**
                                              **21-2338; 21-2344; 21-2343; 22-21;**
                                        **22-40; 22-109; 22-129; 22-137; 22-645**
                                                               **REF: ALL CASES**

**BOB DEAN JR., ET AL.**                                        **SECTION I**

## ORDER & REASONS

Before the Court are numerous motions[1] to remand filed by plaintiffs in the above-captioned consolidated actions. Defendants[2] oppose[3] the motions. The Court ordered jurisdictional discovery pertaining to the domicile of defendant, Bob Dean, Jr. ("Dean").[4] Upon completion of this discovery, plaintiffs filed a supplemental memorandum[5] in support of the motions to remand, and defendants filed a

---

[1] R. Doc. Nos. 16, 24, 33, 34, 36, 60, 61, 70, 89, 97, 116, 129, 141, 149, 157, 167, 170, 186, 196, 220, 227.

[2] Bob Dean, Jr.; Bob Dean Enterprises, Inc.; DHNG, LLC; JAJ Health Care Education Consultants, LLC; Jeffery Demars; Louisiana Health Care Consultants, LLC; Maison De'Ville Nursing Home of Harvey, LLC; Maison De'Ville Nursing Home, Inc.; Maison Deville Nursing Home of Terrebonne Parish; Maison DeVille Opelousas; Michael G. Russo; Opelousas Land Holding Company, LLC; Park Place Healthcare, LLC; Plaquemine Plaza Holdings LLC; Property Holding Company of Crescent City, LLC; Raceland Manor Nursing Home, Inc.; River Palms Nursing & Rehab, LLC; St. Elizabeth's Caring, LLC; and Uptown Healthcare Center, LLC.

[3] R. Doc. Nos. 52, 53, 54, 55, 56, 78, 96, 99, 100, 126, 146, 148, 176, 180, 212, 213, 231, 232.

[4] R. Doc. No. 90.

[5] R. Doc. No. 255.

supplemental memorandum[6] in opposition. For the reasons that follow, the Court concludes that it does not have subject matter jurisdiction in any of the consolidated actions, and it remands each action to the state district court in which it originated.

## I. BACKGROUND

The instant consolidated actions are all brought by, or on behalf of, individuals who were residents of seven nursing homes owned and operated by defendants.[7] Plaintiffs were among the group of approximately 800 to 900 nursing home residents who were evacuated to an industrial warehouse in Independence, Louisiana (the "Waterbury Building") in late August 2021, in advance of Hurricane Ida's landfall in Louisiana.[8] Although the specific allegations and legal claims raised in the consolidated actions vary to some degree, plaintiffs allege, among other things, that the Waterbury Building was not adequately equipped to provide for the basic health and hygiene needs of the residents.[9] Further, plaintiffs assert that there were not sufficient skilled workers necessary to care for the residents.[10] Plaintiffs allege that some residents spent up to six days in the Waterbury Building before the Louisiana Department of Health and the Louisiana State Police evacuated the facility on September 1 and 2, 2021.[11]

---

[6] R. Doc. No. 256.
[7] R. Doc. No. 1-1 ¶ 9.
[8] *Id.* ¶¶ 7, 8, 14, 16.
[9] *Id.* ¶¶ 14–15, 19–22.
[10] *Id.* ¶¶ 17, 21.
[11] *Id.* ¶¶ 25, 31.

The lead case in the instant consolidated actions, *Anderson v. Dean*, No. 21-1891, was filed in the 24th Judicial District Court for the Parish of Jefferson on September 6, 2021.[12] Defendants removed the action to this Court on October 15, 2021.[13] Over the course of the next several months, defendants removed twenty-one additional related cases to the Eastern District of Louisiana. The cases were consolidated with *Anderson*.

Seven of the consolidated actions, including *Anderson*, are putative class actions. Defendants assert that this Court has subject matter jurisdiction in said actions pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). As set forth in greater detail below, CAFA provides for federal jurisdiction, subject to certain exceptions, in class actions in which there are at least 100 class members; the amount in controversy exceeds $5 million; and there is minimal diversity between the parties, meaning that at least one plaintiff is diverse from at least one defendant.

The parties agree that the amount in controversy and class size requirements are met, but they disagree as to whether there is minimal diversity between the parties. Specifically, plaintiffs submit that Dean is a citizen of Louisiana; defendants contend that, although Dean was previously a citizen of Louisiana, he became a citizen of Georgia on September 1, 2021, five days before the first of the consolidated actions was filed in state court. It is undisputed that plaintiffs are citizens of

---

[12] R. Doc. No. 1.

[13] *Id.*

3

Louisiana. Thus, if Dean is a citizen of Louisiana, there is no minimal diversity, and therefore no subject matter jurisdiction, in the putative class actions. Defendants do not allege that any other defendant supplies a basis for minimal diversity.[14]

Defendants contend, assuming the Court has jurisdiction over the putative class actions pursuant to CAFA, that the Court may exercise supplemental jurisdiction in the fourteen non-class actions consolidated before the Court, pursuant to 28 U.S.C. § 1367(a). Supplemental jurisdiction is defendants' sole basis for invoking federal jurisdiction with respect to all of the non-class actions except *Renard v. St. Elizabeth's Caring, LLC*.[15] Plaintiffs argue that § 1367(a) does not authorize the

---

[14] Presumably, this is because the remaining defendants are Louisiana corporations, R. Doc. No. 256-1, at 10–15; individuals who are domiciled in Louisiana, *see Meisler v. Dean*, No 21-1897, R. Doc. No. 1-1, ¶ 3; or Louisiana limited liability companies, R. Doc. No. 54, at 3 n.1; R. Doc. No. 256-1, at 10–15. Although the citizenship of a limited liability company is typically determined by the citizenship of all of its members, *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), CAFA provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). A limited liability company is an "unincorporated association" for CAFA purposes. *See, e.g.*, *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, 768 F.3d 425, 426 n.2 (5th Cir. 2014); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010).

[15] The sole defendant in *Renard v. St. Elizabeth's Caring, LLC*, No. 21-2338, invokes jurisdiction pursuant to both supplemental jurisdiction and diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a). Defendant submits that there is diversity jurisdiction in said action because plaintiff is a citizen of Louisiana and St. Elizabeth's Caring, LLC is a limited liability company whose sole member is Bob Dean, Jr. Because the citizenship of a limited liability company is determined by the citizenship of its members, *see Harvey*, 542 F.3d at 1080, defendant asserts that St. Elizabeth's Caring, LLC is a citizen of Georgia because Dean is a citizen of Georgia. R. Doc. No. 1 ¶ 11.

Court to exercise supplemental jurisdiction over separate civil actions.[16]

On December 9, 2021, following the submission of numerous motions to remand, the Court ordered jurisdictional discovery, limited to the issue of Dean's citizenship.[17] The Court stated that it deemed Dean to allege that he became a citizen of Georgia on September 1, 2021, because although he had not provided an exact date for his domicile change in the present actions,[18] he had recently admitted that he became a citizen of Georgia on September 1, 2021 in a separate action in the Eastern District of Louisiana.[19] In their supplemental opposition, defendants maintain that Dean became a Georgia citizen on September 1, 2021.[20]

Jurisdictional discovery occurred between December 9, 2021, and February 14, 2022.[21] During that time, the parties raised many discovery issues before U.S. Magistrate Judge Janis van Meerveld. The Court will not exhaustively summarize the course of jurisdictional discovery, but it will highlight certain relevant events as

---

[16] *See, e.g.*, R. Doc. No. 60-1, at 2. Because the Court concludes that it lacks CAFA jurisdiction in the putative class actions, it need not reach the question whether a federal court with CAFA jurisdiction in a class action may exercise supplemental jurisdiction over separate civil actions.

[17] R. Doc. No. 90.

[18] Dean initially stated in the instant actions that he decided to make his house in Georgia his "primary residence" sometime "[i]n the summer of 2021," and that he has been a citizen of Georgia "since at least September 1, 2021." *See, e.g.*, R. Doc. No. 57, ¶ 3; R. Doc. No. 1-3, ¶ 3.

[19] In a November 17, 2021 amended answer, Dean stated that he was a citizen of Louisiana on August 31, 2021, and became a citizen of Georgia on September 1, 2021. *See Verdin v. Dean*, No. 21-1976, R. Doc. No. 7, ¶ 2A.

[20] R. Doc. No. 256, at 2, 3, 18, 19, 22.

[21] R. Doc. No. 216.

follows. On December 14, 2021, plaintiffs commenced discovery by issuing a "master set" of requests for admission, interrogatories, and requests for production of documents.[22] On December 27, 2021, defendants informed plaintiffs that they would produce Bob Dean and his wife, Karen Dean, for depositions on January 18 and 19, 2022, respectively.[23]

Dean transmitted his initial responses to plaintiffs' discovery requests on January 7, 2022.[24] Plaintiffs characterize those responses as "incomplete and insufficient."[25] Plaintiffs filed a motion to compel, seeking more complete responses to plaintiffs' master discovery requests.[26] Judge van Meerveld issued an order compelling defendants to produce, among other things, Bob and Karen Dean's credit card statements, bank account information, and air travel documentation during the relevant period.[27]

On February 7, 2022, Dean transmitted his Second Supplemental Responses, which were tailored to the Court's order to compel.[28] Dean also filed a motion stating that Dean had been unable to fully comply with the order to compel, and requesting a seven-day extension for producing, among other things, the relevant credit card

---

[22] R. Doc. No. 109.
[23] R. Doc. No. 255-1.
[24] R. Doc. No. 174-4.
[25] R. Doc. No. 255, at 6.
[26] R. Doc. No. 174.
[27] R. Doc. No. 194, at 2.
[28] R. Doc. No. 255-6.

statements.[29] Judge van Meerveld granted the extension, but warned defendants that failure to supplement discovery, as previously ordered, may result in sanctions, including adverse inferences.[30] Ultimately, Dean failed to fully comply with the order to compel because, among other things, he did not produce the relevant credit card statements, travel documentation, or bank records.[31]

At the same time that the above exchanges were occurring, issues arose as to the proposed depositions of Bob and Karen Dean. On January 11, 2022, defendants filed a motion for protective order, stating that Bob Dean was unable to testify due to his current health condition.[32] In support, defendants submitted letters from two of Dean's physicians, Dr. Peter Lee and Dr. Gerald Goldklang.[33] Defendants also requested that Karen Dean's deposition be conducted via video, so that she would not need to travel to Louisiana and risk exposure to COVID-19.[34] Plaintiffs filed a motion to compel, seeking to obtain medical records from, and schedule depositions for, the doctors who wrote the letters used to support defendants' motion for protective order pertaining to the deposition of Dean.[35] Judge van Meerveld ordered the disclosure of the relevant medical records.[36] Ultimately, plaintiffs deposed Dr. Goldklang and Dr.

---

[29] R. Doc. No. 206.

[30] R. Doc. No. 214, at 2.

[31] R. Doc. No. 255, at 8–9.

[32] R. Doc. No. 143.

[33] R. Doc. No. 156-1.

[34] *Id.*

[35] R. Doc. No. 173.

[36] R. Doc. No. 189.

Lee.[37] However, following a January 18, 2022 discovery conference, plaintiffs notified Judge van Meerveld that they did not intend to pursue depositions of Bob or Karen Dean for the purposes of jurisdictional discovery.[38]

On February 14, 2022, the final day of jurisdictional discovery, Dean submitted a Third Supplemental Response to the plaintiffs, amending his responses to numerous requests for admission.[39] Critically, although Dean had initially admitted that he was not physically present in Georgia on September 1, 2021 because his travel was delayed due to "the remnants of Hurricane Ida moving through the Northeast,"[40] Dean amended his response to state that the Deans "flew from Boston, Massachusetts to Thomaston, Georgia on September 1, 2021."[41] To date, Dean has neither provided official travel documents, nor explained the reason for his amended answer.

Defendants, for their part, state that they have been hampered in their efforts to comply with discovery requests due to Dean's declining health.[42] They also state that compliance has been challenging because Dean and his entities have recently lost over 1000 employees, some of whom had sole access to various accounts at issue in jurisdictional discovery, and because Dean's remaining employees are addressing other legal actions in addition to the instant consolidated actions.[43]

---

[37] R. Doc. Nos. 255-12, P-14.
[38] R. Doc. No. 172.
[39] R. Doc. No. 255-7.
[40] R. Doc. No. 174-4, at 3.
[41] R. Doc. No. 256-1, at 3.
[42] R. Doc. No. 256, at 12–13.
[43] *Id.*

## II.  STANDARD OF LAW

The Class Action Fairness Act ("CAFA") vests federal district courts with original jurisdiction over class actions in which there are 100 or more class members, the amount in controversy exceeds $5 million, and there is minimal diversity, meaning that at least one class member is diverse from at least one defendant. 28 U.S.C. § 1332(d)(2)(A).[44]

Title 28, United States Code, Section 1453 provides for the removal of class actions from state court. While the general removal statute, 28 U.S.C. § 1441, is strictly construed against removal, *see, e.g.*, *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Nevertheless, the burden of establishing subject matter jurisdiction pursuant to CAFA remains with the party seeking removal. *See, e.g.*, *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 n.3 (5th Cir. 2014) (citing *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84–85 (5th Cir. 2013)); *Addison v. Louisiana Reg'l Landfill Co.*, 398 F. Supp. 3d 4, 9 (E.D. La. 2019) (Morgan, J.).

---

[44] Even if these requirements are satisfied, CAFA sets forth several exceptions under which federal courts may or must decline to exercise jurisdiction over a class action. Plaintiffs have invoked two of these exceptions—§ 1332(d)(4)(B) and § 1332(d)(4)(B). However, because the Court concludes that the threshold requirement of minimal diversity has not been satisfied, the Court declines to address the exceptions.

"It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance,* 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)). "This time-of-filing rule . . . . measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing." *Id.* at 570–71. When actions are removed to federal court, "[c]onsistent with general principles for determining federal jurisdiction . . . diversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court." *Ashford v. Aeroframe Servs., LLC*, 907 F.3d 385, 386–87 (5th Cir. 2018) (quoting *Coury*, 85 F.3d at 248–49) (emphasis in original).

CAFA is silent as to the time at which the citizenship of defendants must be established for jurisdictional purposes. The parties do not address the issue in depth, nor is the Court is not aware of any Supreme Court or federal court of appeals case explicitly addressing this issue. However, *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804 (5th Cir. 2007), provides guidance for resolving this question.

In *Preston*, the Fifth Circuit concluded that, in the absence of specific language in the CAFA statute regarding the evidentiary standard for determining the citizenship of the proposed plaintiff class, it would "employ the time-honored standard routinely applied to the fundamental question of citizenship: proof by a preponderance of the evidence." *Id.* at 814. The Fifth Circuit reached this conclusion

because, "[i]n drafting CAFA, Congress explicitly and expressly delineated all deviations from traditional requirements" of federal jurisdiction and removal. *Id.* For instance, "Congress eliminated the requirements for complete diversity and unanimous consent among the defendants to effectuate removal, [and] such changes are clear from the plain language of the statute." *Id.*

Although CAFA is silent as to the time at which the citizenship of defendants must be determined, it specifies that the citizenship of the putative plaintiff class must be determined

> as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

28 U.S.C. § 1332(d)(7). In so specifying, Congress created an "exception[] to the time-of-filing rule of determining of federal diversity jurisdiction." Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3608 (3d ed.); *see also, e.g.*, 2 McLaughlin on Class Actions § 12:6 (18th ed.) ("CAFA does not address the time for determining the citizenship of defendants, which presumably will continue to be governed by settled law holding that jurisdiction is to be assessed at the time the lawsuit is commenced.").

The Fifth Circuit's method of analysis in *Preston* applies with particular force here, given that CAFA explicitly addresses the times at which the citizenship of the plaintiff class must be established, departing from the general time-of-filing rule, but remains silent as to the determination of the citizenship of defendants. Accordingly, with respect to the citizenship of defendants, the Court will adhere to the time-

honored principle that "diversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court." *Ashford*, 907 F.3d at 386–87. Defendants must establish that minimal diversity existed at the time of filing and removal for each of the consolidated putative class actions,[45] and for the time of filing and removal in *Renard*, the only non-class action in which defendants invoke diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[46]

Finally, "[i]n making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties.  The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Coury*, 85 F.3d at 249 (citations omitted).

---

[45] In federal court, "consolidation does not cause one civil action to emerge from two; the actions do not lose their separate identity." *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982). Accordingly, the Court "must view each consolidated case separately to determine the jurisdictional premise upon which each stands." *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*, 874 F.2d 283, 287 (5th Cir. 1989).
[46] *See supra* n.15.

## III. ANALYSIS

As stated above, the parties do not dispute that the putative classes meet CAFA's class size and amount in controversy requirements. However, plaintiffs dispute defendants' contention that minimal diversity exists in the consolidated class actions. Specifically, plaintiffs contend that Dean is a citizen of Louisiana; defendants contend that although Dean was previously a citizen of Louisiana, he became a citizen of Georgia on September 1, 2021, several days prior to the filing of the first of the consolidated actions on September 6, 2021. It is undisputed that plaintiffs are citizens of Louisiana; thus, if Dean is a citizen of Louisiana, then the Court does not have jurisdiction in any of the consolidated cases.[47]

The determination of citizenship is a matter of federal common law. *Coury*, 85 F.3d at 248. For jurisdictional purposes, the term "citizenship" is synonymous with "domicile." *Martin v. Lafon Nursing Facility of the Holy Fam., Inc.*, 548 F. Supp. 2d 268, 271 (E.D. La. 2008) (Africk, J.) (citing *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954)). Domicile presents a mixed question of law and fact, however, "in practice, the district court's determination of domicile is reviewed on appeal as a question of fact" and it will be upheld unless it is clearly erroneous. *Coury*, 85 F.3d at 251; *accord*

---

[47] As noted above, *supra* n. 15–16, supplemental jurisdiction is defendants' sole basis for invoking jurisdiction in thirteen of the fourteen non-class actions consolidated before the Court. The remaining non-class action, *Renard*, is premised upon diversity jurisdiction in addition to supplemental jurisdiction; if Dean is determined to be a citizen of Louisiana, then complete diversity does not exist in *Renard*.

*Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 450 (5th Cir. 2003).

"A person's domicile persists until a new one is acquired or it is clearly abandoned." *Coury*, 85 F.3d at 250. Thus, there is a "presumption in favor of the continuing domicile," which requires the party seeking to show a change in domicile to prove the concurrence of (1) physical presence in the new location of domicile, and (2) an intention to remain there indefinitely. *Id.* "There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established." *Acridge*, 334 F.3d at 448.

In cases where the same party is arguing a change in domicile and invoking federal jurisdiction, "it has both the initial burden to offer evidence of the change *and* the ultimate burden of proof of diversity." *Ramsey v. Chhean*, No. 20-2557, 2020 WL 7422913, at *4 (E.D. La. Dec. 18, 2020) (Africk, J.) (citing *Coury*, 85 F.3d at 250).

These two burdens entail two separate inquiries, which should not be conflated: if defendants meet their first burden of establishing that Dean changed his domicile on September 1, 2021, Dean would then enjoy the presumption of continued domicile going forward. *Coury*, 85 F.3d at 250. He would therefore be presumed to be a Georgia citizen on the dates upon which the putative class actions were commenced and removed to federal court—the first action having been commenced on September

6, 2021. Dean would not be required to be physically present in Georgia on the relevant commencement and removal dates.

Thus, the Court's central task is to determine whether defendants have sufficiently established the requisite concurrent physical presence and intent to remain in Georgia on September 1, 2021. As indicated above, the Court focuses on September 1 in particular because this is the date upon which Dean asserts he became a citizen of Georgia.[48] Further, in their supplemental opposition memorandum, defendants maintain that Dean became a Georgia citizen on September 1, 2021.[49]

## A. Physical Presence

During jurisdictional discovery, Dean initially admitted that he was not in Georgia on September 1, 2021. Specifically, in his January 7, 2022 response to plaintiffs' request for an admission that he was not physically present in Georgia on September 1, Dean stated: "Admitted. As of September 1, 2021, Dean had already decided to leave Baton Rouge, Louisiana and become a permanent resident of Thomaston, Georgia. He was delayed in returning to Georgia because of the remnants of Hurricane Ida moving through the Northeast."[50]

---

[48] Had Dean not made such an assertion, defendants would be free to assert, and prove, that Dean changed his domicile on any date—so long as this change in domicile occurred on or before the filing and removal dates of the putative class actions, defendants would meet their burden with respect to establishing minimal diversity.

[49] R. Doc. No. 256, at 2, 3, 18, 19, 22.

[50] R. Doc. No. 174-4, at 3.

However, on February 14, 2022, Dean amended his response as follows: "Denied. Bob and Karen Dean flew from Boston, Massachusetts to Thomaston, Georgia on September 1, 2021."[51] Notably, because Dean did not seek leave of court to amend his initial admission that he was not physically present in Georgia, this admission remains "conclusively established" pursuant to Rule 36(b) of the Federal Rules of Civil Procedure.[52]

Dean's amended response on this issue cites to a document described as Dean's "[p]rivate plane trip log."[53] This document appears to be a photograph of a computer screen which displays an email from an individual named "Bubby," listing details of flights in July through September.[54] Defendants cite to this document as evidence that Bob and Karen Dean flew from Boston, Massachusetts, to Thomaston, Georgia on September 1, 2021.[55] To date, defendants have not explained who "Bubby" is and, more to the point, defendants have not submitted any official documentation evidencing the relevant flights—for instance, flight manifests, billing records, or affidavits from any pilots or crewmembers.

---

[51] R. Doc. No. 256-1, at 3.

[52] Rule 36(b) provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."

[53] R. Doc. No. 256-1, at 31.

[54] *Id.* at 487.

[55] *See, e.g.*, R. Doc. No. 256, at 11.

Defendants' other evidence as to Dean's whereabouts fares no better than Bubby's email. In his discovery responses, Dean states that he "was physically present in the State of Georgia on all dates on which travel was not confirmed . . . . by Karen Dean's personal calendar."[56] Defendants also submit that, "[f]rom September 1, 2021-November 15, 2021, Karen Dean used her personal credit card in Georgia 8 times and once in Louisiana."[57] Defendants provide redacted records in support of the same.[58] However, contrary to defendants' implication that these records might shed light on Karen Dean's location as early as September 1, the earliest transaction in these records is dated September 8. The calendar does contain any entries dated September 1, 2021, the critical date in the present inquiry.[59]

Finally, defendants produced a document that appears to conflict with their claim that the Deans flew from Boston to Thomaston on September 1, 2021. The document, which defendants label as "Karen Dean dates and trips," appears to be an email listing flights from September through November, and contains an entry indicating that Karen and/or Bob Dean flew from Manchester, New Hampshire to

---

[56] R. Doc. No. 256, at 10. Dean states that the "confirmed travel dates" are "September 14-16 (Wyoming), September 17-10 (New Mexico), September 20 (Wyoming), September 23-24 (Louisiana), and October 18-20 (New York)." *Id.*

[57] *Id.* at 8.

[58] *Id.* (citing R. Doc. No. 256-1, at 488–89).

[59] Even if the records contained entries pertaining to September 1, the Court would be reticent to draw conclusions about one spouse's location based on evidence as to the other's location—absent corroborating evidence suggesting that they were together during the relevant times, which is lacking here—and especially given that the record indicates that Karen and Bob Dean spend significant time apart.

Indiana on September 2, 2021.[60] This email, as with the so-called "[p]rivate plane trip log" email, is a poor substitute for official travel records; however, the Court takes note of it insofar as it conflicts with defendants' other evidence.

Defendants' inability or refusal to produce competent evidence as to Dean's whereabouts on September 1, 2021—especially travel records—is significant for several reasons. First, the Court, in ordering jurisdictional discovery,[61] explicitly stated that defendants must prove that Dean was physically present in Georgia on September 1, 2021; thus, defendants were aware that this date would be critical to the Court's analysis. Second, U.S. Magistrate Judge van Meerveld ordered defendants to produce certain records, including the flight manifest of Dean's private plane and any other travel documentation for the relevant time period,[62] and subsequently admonished defendants that failure to provide such materials may result in sanctions, including adverse inferences.[63]

---

[60] R. Doc. No. 256-1, at 483.

[61] R. Doc. No. 90, at 3.

[62] R. Doc. No. 194, at 2.

[63] R. Doc. No. 214, at 2. Under the Federal Rules of Civil Procedure, if a party "fails to obey an order to provide or permit discovery," the court may impose sanctions, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A). Plaintiffs argue that it should be deemed established that Dean never intended to change his domicile to Georgia prior to the removal of the first action on October 15, 2021. R. Doc. No. 255, at 37. Defendants respond that sanctions are not appropriate because "Dean has fully complied with all orders to the extent possible." R. Doc. No. 256, at 21. Because defendants have the burden of proof in establishing a change in domicile and have failed to adduce sufficient evidence to satisfy this burden, the Court need not conduct a sanctions analysis, and will not

In sum, defendants have failed to establish Dean's whereabouts on September 1, 2021, and thus have failed to prove that Dean changed his domicile at the time they assert he did.[64] The Court concludes, on this basis alone, that defendants have not met their burden to establish federal jurisdiction in the consolidated actions. However, defendants have also failed to prove the requisite intent to change domicile, as set forth below.

**B. Intent**

In determining a party's intent with respect to domicile, courts look to a variety of factors, including "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Coury*, 85 F.3d at 251. No single factor is determinative. *Id.* Additionally, "[a] litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." *Id.* (citing *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 556 (5th Cir. 1985); *Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir. 1972). Finally, a litigant's motive for changing domicile is not relevant to the analysis—even if the motive is to create federal diversity jurisdiction. *See, e.g.*, *Paudler v. Paudler*,

---

impose adverse inferences in this matter. Even in the absence of adverse inferences, defendants have not satisfied their burden.

[64] Although the Court focuses on September 1, 2021 for reasons stated above, the Court notes that defendants have not adduced sufficient evidence as to Dean's physical presence in Georgia on any date.

185 F.2d 901, 902–03 (5th Cir. 1950) ("If plaintiff's new citizenship was really acquired, her right to sue in the Federal courts was a legitimate and legal consequence, not to be impeached by her motive for removal.").

### 1. Objective Evidence

At the outset, the Court acknowledges that, "in this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking." *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). Several of the traditional domicile factors are of limited utility in situations where, as here, an individual maintains real and personal property and businesses in multiple states. Such factors are, at best, inconclusive in this matter. The remaining factors weigh against concluding that Dean is a citizen of Georgia. Because defendants have the burden to prove changed domicile, the fact that several factors weigh against Dean, and the remaining factors are inconclusive at best, means that defendants have not met their burden in establishing that Dean became a Georgia citizen. The Court will consider each factor in turn.

***Voter registration and driver's license.*** In his second declaration, Dean stated that he intended to register to vote in Georgia and to obtain a Georgia driver's license, although he did not specify when he intended to do so.[65] As of March 4, 2022, the date on which defendants' supplemental opposition memorandum was filed, Dean

---

[65] R. Doc. No. 57 ¶¶ 4, 5.

still had not registered to vote in Georgia, nor did he have a Georgia driver's license.[66] This factor weighs against defendants.

   ***Community organizations.*** Dean has produced no evidence of participation in Georgia community organizations. However, he produced a bill for the City Club of Baton Rouge, indicating that he was a member of the organization as of November 30, 2021.[67] This factor weighs against defendants.

   ***Family.*** Defendants state that Dean has ties to Georgia through his wife, Karen Dean, who "is, and always has been, a citizen of Georgia."[68] The Court cannot conclude that Karen Dean is a citizen of Georgia based upon defendants' evidence.[69] That being said, even assuming that defendants could establish that Karen Dean has

---

[66] R. Doc. No. 256, at 6. Defendants also submit that "Dean was unable to obtain his Georgia driver's license due to experiencing agitation and frustration while at the DMV." *Id.* In support, defendants cite to a Dean entity employee, Bernadette Hollywood's testimony. However, Hollywood stated that she did not recall when such an attempt was made. R. Doc. No. 256-12, at 8–9. Another Dean employee, Megan Diener, testified that Karen Dean asked her to call the DMV in Georgia to inquire about what was required for Dean to get a Georgia license; she testified that she was unsure of the date that this occurred, but it must have been sometime in November or December. R. Doc. No. 256-11, at 9. Accordingly, this testimony has no bearing on Dean's intent to become a citizen of Georgia in September 2021.

[67] R. Doc. No. 255-2, at 84.

[68] R. Doc. No. 256, at 7, 19.

[69] In support, defendants submit Karen Dean's Georgia driver's license, which was issued in August 2020. *Id.* at 19 (citing R. Doc. No. 256-1, at 469). Defendants also state that "Karen Dean, **through Archer Dean Properties**, has had an Atlanta, GA condominium since at least 2016." *Id.* (citing R. Doc. No. 256-1, at 121, 125, 215–227, 462) (emphasis added). They cite to Comenge's testimony that Karen Dean "was from Atlanta." *Id.* at 7 (citing R. Doc. No. 256-10, at 8). However, defendants have not submitted evidence pertaining to, for example, Karen Dean's voter registration, involvement with community organizations, or taxes.

always been a citizen of Georgia, this factor would be inconclusive. After all, this factor is premised upon the notion that spouses typically share the same place of domicile.[70] However, if defendants established that Karen Dean has always been a citizen of Georgia, this would mean that Karen and Bob Dean spent the entirety of their marriage, prior to September 2021, as citizens of different states. Therefore, their own history instructs that the Court should not presume that they share a place of domicile.[71] Accordingly, this factor is inconclusive at best.

**Bank accounts.** Dean initially declared that he has held bank accounts in Georgia "since before September 1, 2021."[72] In her order with respect to plaintiff's motion to compel, Judge van Meerveld ordered that, if Dean intended to claim that he held bank accounts in Georgia prior to September 1, 2021, he must produce documents verifying this claim.[73] Dean did not produce such evidence. In defendants' supplemental opposition memorandum, they state only that a Bob Dean Enterprises

---

[70] This notion is sometimes articulated as a "rebuttable presumption that 'a married man is . . . domiciled where his wife and family live.'" *Goryl v. Tidal Software, Inc.*, No. 07-2079, 2007 WL 2471469, at *1 (S.D. Tex. Aug. 27, 2007) (quoting *Wade v. Wood,* 2006 WL 3499504 at *2 (S.D. Tex. Dec. 5, 2006)); *see also* Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3612 n.29 and accompanying text (3d ed.) (collecting cases).

[71] Defendants submit that, "[o]ther than Bob Dean, there was no one better to testify as to Bob Dean's intent to permanently reside in Georgia than Karen Dean," and urge that because plaintiffs ultimately declined to depose Karen Dean, they "squandered the opportunity to learn the facts about Bob Dean's intent to change his domicile." R. Doc. No. 256, at 17. However, defendants, not plaintiffs, have the burden of establishing changed domicile and subject matter jurisdiction in this matter.

[72] R. Doc. No. 1-3 ¶ 7.

[73] R. Doc. No. 194, at 2 (referring to plaintiffs' request for production number 4, R. Doc. No. 255-7, at 33).

account was opened at United Bank in Thomaston, GA on November 16, 2021, and Karen Dean's personal account was opened on November 9, 2021.[74] A Dean employee testified that she has no knowledge of Dean having a bank account in Georgia prior to the opening of a bank account for Bob Dean Enterprises in November 2021.[75] Accordingly, this factor weighs against defendants.

**Businesses.** Dean owns a Georgia-based timber company.[76] He has many business entities in Louisiana,[77] and Dean admits that these entities' addresses have not been transferred to Georgia.[78] Two employees of Dean entities, Megan Diener and Bernadette Hollywood, testified that they work out of Dean's Baton Rouge business, and various employees, who worked for Dean from September to November of 2021 before either quitting or being terminated, also worked out of that office.[79] It appears that the bulk of Dean's business entities remain in Louisiana, and Dean has offered no evidence to the contrary. Accordingly, this factor weighs against defendants.

***Real and personal property.*** The record indicates that Dean owns a furnished house at 3711 St. Charles Ave., New Orleans, LA, and a furnished house

---

[74] R. Doc. No. 256, at 5.

[75] R. Doc. No. 255-9, at 43.

[76] *See, e.g.*, R. Doc. No. 256, at 4; R. Doc. No. 256-1, at 89.

[77] *See, e.g.,* R. Doc. No. 255-6, at 3–8.

[78] *Id.* at 3.

[79] R. Doc. No. 255-9, at 12–17; R. Doc. No. 255-10, at 21–22, 28, 32–36, 59; R. Doc. No. 255-11, at 12. Although Dean may have taken some steps to establish a home office in Georgia, it appears that these efforts only started in late November or early December 2021. R. Doc. No. 255-2, at 159–66; R. Doc. No. 255-9, at 43–44.

at 222 Shadows Bend Dr., Baton Rouge, LA.[80] Dean, through various limited liability companies, also owns property in Georgia: Archer Dean Properties, LLC owns a condominium in Atlanta, which is referred to as Karen Dean's condominium.[81] Georgia Plantations, LLC owned[82] the 1924 Crest Highway property in Thomaston, Georgia.[83] Dean also owns furnished homes in New Mexico and Oregon, a condominium in Florida, and a house in Maine.[84]

With respect to personal property, Dean asserts, among other things, that he or his entities own seventeen cars which are registered in Georgia, and he has provided Georgia certificates of title for ten vehicles.[85] However, the record indicates that he keeps several cars, at least, in both Louisiana and Georgia.[86] As noted above,

[80] R. Doc. No. 255-7, at 39–40; R. Doc. No. 255-11, at 115–16; R. Doc. No. 255-9, at 41; R. Doc. 24-10; R. Doc 24-9.

[81] R. Doc. No. 256, at 4 (citing R. Doc. No. 256-1, at 125).

[82] R. Doc. No. 1-3; R. Doc. No. 57. Plaintiffs note that they recently learned that Georgia Plantations, LLC apparently sold the Thomaston home to "Bobby G. Dean, Jr. as Trustee of the Dean Family Trust" in December 2021. R. Doc. No. 255, at 10.

[83] Dean produced utility bills for these properties. However, as plaintiffs note, Dean "did not produce any of the same documents for the properties in Louisiana (or any other state) to allow the Plaintiffs and this Court to compare which property was being utilized the most, and when." R. Doc. No. 255, at 31.

[84] R. Doc. No. 255-7, at 20; R. Doc. No. 255-11, at 115–16; R. Doc. No. 255-17; R. Doc. No. 255-9, at 33.

[85] R. Doc. No. 256, at 4–5 (citing R. Doc. No. 256-1, at 90–120). Additionally, defendants produced a redacted and incomplete spreadsheet listing certain vehicles apparently owned by Dean entities. R. Doc. No. 255-2, at 213. This unverified spreadsheet cannot serve as competent evidence regarding Dean's vehicles.

[86] Diener testified that Dean has at least two cars at his Shadows Bend house in Baton Rouge, and at least five cars in the warehouse in Baton Rouge. R. Doc. No. 255-9, at 49-50, 54-57. Former Dean employee Ben Comenge testified that Dean moved his cars around regularly, and that Dean had approximately six to eight cars in

these factors are inconclusive, because Dean maintains real and personal property in several states.

***Taxes.*** Dean submitted evidence that several of his limited liability companies pay taxes in Georgia, although he submitted no evidence that he pays Georgia taxes as an individual. Specifically, Dean submitted two Upton County, Georgia 2021 state, county & school ad valorem tax notices issued to Zenoria Timber Company, LLC and Georgia Plantations, LLC.[87] Dean also submitted a Fulton County, Georgia 2021 tax bill issued to Archer Dean Properties, LLC.[88] The address listed on the tax notices for these limited liability companies is in Baton Rouge, Louisiana.[89] In response to plaintiffs' request for production of "[r]ecords of all homestead exemptions claimed by [the Deans] in effect during the Applicable Timeframe," Dean responded that there were no responsive documents in his possession.[90] Despite plaintiffs' request for Louisiana tax records, Dean did not produce any such records.[91]

This factor is inconclusive largely for the same reasons stated above—Dean, through limited liability companies, maintains property in Louisiana and Georgia. Therefore, the fact that Dean's limited liability companies pay taxes on property in Georgia does little to help his case. Evidence of a homestead exception would certainly

---

Louisiana, as well as approximately the same in Georgia, at least around the time of the hurricane. R. Doc. No. 255-11, at 78.

[87] R. Doc. No. 255-2, at 80–82.

[88] *Id.* at 79.

[89] R. Doc. No. 255-2, at 80–82.

[90] R. Doc. No. 255-7, at 43.

[91] R. Doc. No. 256-1, at 35–36.

be helpful in determining Dean's primary home, but Dean has not submitted any such evidence.

In sum, the objective evidence establishes that Dean remained a Louisiana citizen on the relevant dates, namely, the filing dates[92] of each putative class action consolidated before the Court. At most, Dean provides some evidence that he began taking steps towards changing his domicile in November 2021.[93] However, even this evidence would be insufficient to establish that he became a citizen of Georgia at that time.

### 2. Statements of Intent

Bob Dean has submitted two declarations in the consolidated actions. Dean declares that Georgia Plantations, LLC, which he owns, purchased a residence in Thomaston, Georgia in April of 2020.[94] He states that he and Karen Dean spent time at both their Louisiana and Georgia residences during 2020 and 2021, and decided to make the Thomaston home their permanent residence in the summer of 2021.[95] He declares that the Thomaston home has been their permanent residence "since at least

---

[92] The first putative class was filed on September 6, 2021. R. Doc. No. 1, at 1. The final putative class action was filed on October 8, 2021. *Molliere v. Dean*, No. 21-2274, R. Doc. No. 1, at 1.

[93] *See, e.g.*, nn. 66, 74, 76, 79.

[94] R. Doc. No. 57 ¶ 2. In his first declaration, Dean stated that he owned the property, and made no mention of Georgia Plantations, LLC. R. Doc. No. 1-3 ¶ 2. He also stated that the property was purchased in April 2019. *Id.* In his second declaration, Dean states that this statement was in error, and that the property was purchased in April 2020. R. Doc. No. 57.

[95] R. Doc. No. 57 ¶ 3.

26

September 1, 2021."[96] Karen Dead also submitted a declaration, providing the same timeline as to their decision to make the Thomaston home their permanent residence.[97] Dean declares that he "intend[s] to reside in the state of Georgia permanently and indefinitely."[98]

Additionally, defendants cite to testimony by Ben Comenge, a former Dean employee, who testified that, months prior to Hurricane Ida, Dean mentioned he wanted to leave Louisiana and may have been working on an agreement to sell his nursing homes and some other real estate.[99] This testimony is favorable to Dean, but only minimally so, because while it indicates that Dean was contemplating leaving Louisiana, it does not provide requisite specificity as to if and when Dean would act on such thoughts. The Court determines that this testimony carries little weight.

Plaintiffs submit that the Court should disregard Dean's statements of intent for several reasons. First, plaintiffs, citing *Coury*, urged in their initial motions to remand that "a litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts."[100] Second, plaintiffs submit that the Court should disregard Dean's statements of intent because Dean has taken the position that his mental capacity has eroded and he has

---

[96] *Id.*

[97] R. Doc. No. 58 ¶ 3.

[98] R. Doc. No. 1-3 ¶ 11.

[99] R. Doc. No. 256-10, at 6–7.

[100] *See, e.g.*, R. Doc. No. 61-1, at 16 (quoting *Coury*, 85 F.3d at 251).

submitted medical evidence to substantiate this claim.[101] They assert that Dean's "inability to recall details as to his travel plans and his physical whereabouts at any given time, the date he acquired the Georgia residence, and various other inconsistencies further erodes the reliability of his statement as to domiciliary intent."[102] Generally speaking, with respect to Dean's conduct and statements throughout this litigation, plaintiffs suggest that Dean either lacks the mental capacity to develop the "intent" to change his domicile and to make sworn statements, or he is "gaming this Court."[103]

Defendants concede that "Dean began acting noticeably 'different' as early as June of 2021," but argue that "his decline was progressive and peaked between December of 2021 and January 2022[.]"[104] Accordingly, defendants assert that Dean still had the requisite capacity on the dates that he changed his domicile and made his first and second declarations in this case—on September 1, October 15, and November 16, respectively.[105]

The Court need not consider the details of Dean's capacity to resolve the instant motions. Defendants have the burden of proving that Dean changed his domicile. Regardless of the reasons for Dean's "conflicting statements and actions,"

---

[101] *Id.* at 21.
[102] *Id.*
[103] *Id.* at 2–3.
[104] R. Doc. No. 256, at 15.
[105] *Id.*

the Court affords Dean's statements "little weight" insofar as they are inconsistent with Dean's other statements or objective facts. *Coury*, 85 F.3d at 250–51.

Finally, Plaintiffs appear to argue[106] that the Court should not consider Dean's declarations because they are inadmissible hearsay due to Dean's refusal to be deposed. But, as noted above, the Court, "[i]n making a jurisdictional assessment . . . has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Coury*, 85 F.3d at 249 (citations omitted). The Fifth Circuit has made clear that courts may consider statements that constitute hearsay or that would otherwise be inadmissible at trial—for instance, affidavits[107]—when determining an individual's domicile. *See, e.g.*, *id.*; *Marion Cnty. Econ. Dev. Dist. v. Wellstone Apparel, LLC*, No. 13-44, 2013 WL 3328690, at *5 (S.D. Miss. July 2, 2013) (collecting cases). Further, courts routinely look to "summary-judgment-type evidence," including affidavits, when resolving jurisdictional issues raised in motions to remand, *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) (citing

---

[106] Plaintiffs are unclear on this point, stating: "By refusing to testify, Dean has rendered the statements in his declaration as hearsay that is inadmissible but, minimally. entitled to no weight." R. Doc. No. 255, at 22 (punctuation error in original).

[107] The Court sees no reason to differentiate between a sworn affidavit, and Dean's unsworn declaration, made under penalty of perjury, pursuant to 28 U.S.C. § 1746. *See, e.g.*, *Jzace#1, LLC v. Jack-Cat, LLC*, No. 15-275, 2015 WL 12777185, at *2 (S.D. Tex. Aug. 12, 2015) (finding that declaration, made pursuant to 28 U.S.C. § 1746, is competent and relevant evidence to establish domicile). *Cf. Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (unsworn declarations, made pursuant to 28 U.S.C. § 1746, are competent summary judgment evidence).

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 231 (5th Cir. 2014)), and when making other jurisdictional determinations. *See, e.g.*, *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (courts may consider affidavits in determining personal jurisdiction).[108]

Further, Plaintiffs cite no authority for the proposition that a declarant's refusal to submit to cross-examination renders his declaration incompetent evidence for the purposes of jurisdictional analysis. *Cf. Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 604–05 (7th Cir. 2000) (holding that there is no "cross-examination" requirement for affidavits offered at the summary judgment stage). Thus, the Court is not persuaded that it must decline to consider Dean's declarations whatsoever. However, the Court affords the declarations little weight, for the reasons stated above.

---

[108] It would be a different matter if plaintiffs alleged that Dean's declarations *contained* hearsay. The Circuit's approach to affidavits at the summary judgment stage is instructive on this point. "[W]hile an affidavit has limited admissibility at trial, it is sufficient evidence to defeat a motion for summary judgment, but inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court." *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) (citing *Goodwin v. Johnson,* 132 F.3d 162, 186 (5th Cir. 1997)). However, Dean's declarations are based on personal knowledge and contain no hearsay.

## IV. CONCLUSION

In sum, defendants have not adduced sufficient evidence to satisfy either of the two requirements for change in domicile: concurrent physical presence and intent to remain. Although this Court's inquiry has focused on whether Dean became a citizen of Georgia on September 1, 2021, the Court also concludes that Dean has not adduced sufficient evidence to prove that he became a citizen of Georgia on or before any of the commencement dates of the putative class actions.

Thus, the Court determines that Dean was a citizen of Louisiana on the dates that the seven putative class actions were filed in state court and removed to federal court. Because the parties are not minimally diverse, the Court lacks CAFA jurisdiction in the putative class actions. Because the Court does not have CAFA jurisdiction in said putative class actions, it may not exercise supplemental jurisdiction in the non-class actions. The Court also lacks diversity and supplemental jurisdiction in *Renard*.

Finally, although no motion to remand has been filed pertaining to *Gould v. Dean*, No. 22-109, and *Abalos v. Dean*, No. 22-645, the Court, exercising its duty to examine the basis of subject matter jurisdiction *sua sponte*, *PNC Bank, Nat'l Ass'n v. Ruiz*, 989 F.3d 397, 401 (5th Cir. 2021), determines that it does not have subject matter jurisdiction in *Gould* and *Abalos*, which are non-class actions premised solely on supplemental jurisdiction, and remands both actions to state court. Accordingly,

**IT IS ORDERED** that the motions to remand are **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Civil Action Nos. 21-1891, 21-2099, 21-2108, 21-2338, 22-21, 22-109, and 22-129 are hereby **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson.

**IT IS FURTHER ORDERED** that Civil Action No. 21-2344 is hereby **REMANDED** to the 17th Judicial District Court for the Parish of Lafourche.

**IT IS FURTHER ORDERED** that Civil Action Nos. 21-1898, 21-1899, 21-2101, 21-2107, and 22-40 are hereby **REMANDED** to the 21st Judicial District Court for the Parish of Tangipahoa.

**IT IS FURTHER ORDERED** that Civil Action Nos. 21-2294 and 22-137 are hereby **REMANDED** to the 32nd Judicial District Court for the Parish of Terrebonne.

**IT IS FURTHER ORDERED** that Civil Action Nos. 21-1897, 21-1985, 21-1988, 21-2054, 21-2274, 21-2343, 22-645 are hereby **REMANDED** to the Civil District Court for the Parish of Orleans.

New Orleans, Louisiana, March 17, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**